# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

TONY BUSTILLOS                                                                                     PLAINTIFF

v.                                                    CIVIL ACTION NO.: 4:12-CV-007-SA-JMV

MISSISSIPPI VALLEY STATE UNIVERSITY, ET AL.              DEFENDANTS

## MEMORANDUM OPINION

Before the Court is a Motion for Summary Judgment [28] filed by Defendants Mississippi Valley State University and Bryce Lowe. Also before the Court is a Motion for Leave to File Surrebuttal Memorandum [37] by Plaintiff Tony Bustillos. After considering the motions, response, rules, and authorities, the Court is prepared to rule.

## BACKGROUND FACTS & PROCEDURAL HISTORY

Plaintiff Tony Bustillos began working for Defendant Mississippi Valley State University (MVSU) as a dorm monitor in early 2005. Bustillos alleges that almost immediately after beginning his employment with MVSU, Bryce Lowe, MVSU's Director of Residential Life/Student Housing, began sexually harassing him. As the Director, Lowe occupied a position of authority directly above Bustillos' immediate supervisor.

Bustillos alleges that Lowe continuously harassed him by making lewd and obscene comments of a sexual nature, sexual advances, requests for pictures of his genitalia, and unwelcome physical touching.[1] Bustillos further alleges that Lowe constantly threatened him with termination.

Bustillos alleges that in November 2010, Lowe asked him to step outside after a dorm meeting. Lowe informed Bustillos that he had heard that Bustillos had taken an extra fifteen minutes

---

[1]Bustillos' description of Bryce's harassment in his deposition is considerably more lurid, however, it is not necessary to this opinion and will not be repeated.

for his lunch break, but "that's okay. If you just let me suck your dick, we'll call it a day." Bustillos said that he "blew a cap" and told Lowe "I done told you about this ol' punk-ass [shit]" and "Get away from me with that." He also told Lowe "You need to stay away from me with that bullshit." Two days later, on November 16, 2010, Lowe recommended that Bustillos be suspended without pay for five days for exceeding his break time, using profane language, threatening his supervisor, and improperly exiting the building through an emergency exit door. Bustillos' suspension was approved by Dr. Johnny D. Jones, the Vice-President of Student Affairs, without Bustillos' being afforded an opportunity to present his story of what happened.

On November 22, 2010, Bustillos filed a charge of discrimination with the EEOC, alleging that he had been suspended for refusing to go along with Lowe's sexual advances. On August 1, 2011, Bustillos was moved from working the afternoon shift to the night shift allegedly due to excess absenteeism on Mondays. Bustillos claims the night shift is a more undesirable assignment and that the shift change was in retaliation for his filing an EEOC charge. Bustillos filed the instant suit against MVSU and Lowe, alleging sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000, *et seq.* and 42 U.S.C. § 1983.

## SUMMARY JUDGMENT STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." FED. R. CIV. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant." Agnew v. Washington Mut. Fin. Group, LLC, 244 F. Supp. 2d 672, 675 (N.D. Miss. 2003) (citing Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." Oliver v. Scott, 276 F.3d 736, 744 (5th Cir. 2002).

## DISCUSSION

**Motion for Leave to File Surrebuttal [37]**

Plaintiff has filed a Motion for Leave to File a Surrebuttal, asserting that "Defendants' Rebuttal Memorandum basically contained a summary judgment request on two additional claims for which Defendants had not previously moved for summary judgment." Defendants have not opposed the motion. Upon due consideration, the Court finds that Plaintif's motion should be granted; the Court considered the proffered surrrebuttal in considering the Defendants' Motion for Summary Judgment.

**Motion for Summary Judgment [28]**

I.  Title VII Claims

    A.  Bryce Lowe

Bustillos has stipulated that his Title VII claims against Bryce Lowe should be dismissed.

3

Accordingly, Defendants' Motion for Summary Judgment is granted as to this claim.

B.     MVSU

Bustillos brings claims against MVSU for both sexual harassment and retaliation in violation of Title VII.

1.     Sexual Harassment

To prove Bustillos' sexual harassment claim, he must establish that (1) he belongs to a protected class; (2) was subject to unwelcome harassment; (3) based upon sex; (4) the harassment affected a term, condition, or privilege of his employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. Watts v. Kroger Co., 170 F.3d 505, 509 (5th Cir.1999). However, where—as here—the alleged harasser has supervisory authority over the employee, only the first four elements need to be satisfied. Id.  To prove the harassment affected a term, condition, or privilege of employment, Bustillos must prove that it either resulted in a tangible employment action (quid pro quo) or was severe or pervasive (hostile work environment). Burlington Indus., Inc. v. Ellreth, 524 U.S. 742, 753-54, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998).

The first task of the Court, when evaluating a claim of sexual harassment under Title VII, is to "determine whether the complaining employee has suffered a 'tangible employment action.'" Williams v. Barnhill's Buffet, Inc., 290 F. App'x. 759, 761 (5th Cir. 2008) (citing Casiano v. AT&T Corp., 213 F.3d 278, 283 (5th Cir. 2000)). "If [he] has, [his] suit is classified as a 'quid pro quo' case; if [he] has not, [his] suit is classified as a 'hostile environment' case." Williams, 290 F. App'x. at 761.  A "tangible employment action" is defined as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities,

4

or a decision causing a significant change in benefits." Ellreth, 524 U.S. at 761, 118 S. Ct. 2257. It is the "means by which the supervisor brings the official power of the enterprise to bear on subordinates." Id. at 762, 118 S. Ct. 2257. "A tangible employment action in most cases inflicts direct economic harm." Id. In his Complaint, Bustillos asserts claims for both quid pro quo sexual harassment and hostile work environment sexual harassment.[2]

For the first time in its reply brief, MVSU argues that Bustillos' quid pro quo claim is not viable because a suspension without pay is not a "tangible employment action." Although this argument was not properly raised in the initial motion, the Court will nonetheless address it for the sake of completeness. See Williams, 290 F. App'x at 761 ("In evaluating a claim of sexual harassment under Title VII, courts must first determine whether the complaining employee has suffered a 'tangible employment action.'").

The Supreme Court noted in Ellerth that, "Dock[ing] another's pay" is a "direct economic harm" that can only be inflicted by a supervisor. Ellerth, 524 U.S. at 762, 118 S. Ct. 2257. Moreover, several courts of appeal have considered this issue and held that a suspension without pay is a tangible employment action. See e.g. Passananti v. Cook County, 689 F.3d 655, 671 (7th Cir. 2012); Howington v. Quality Restaurant Concepts, LLC, 298 F. App'x 436, 442 (6th Cir. 2008); Jin v. Metro Life Ins. Co., 310 F.3d 84, 100 (2d Cir. 2001); see also Cotton v. Cracker Barrel Old Country Store, Inc., 434 F.3d 1227, 1231 (11th Cir. 2006) ("An employment decision that alters the

---

[2]Although MVSU argues in its reply memorandum that Bustillos did not assert a quid pro quo claim in his Complaint, the Court finds this contention without merit. While the Complaint does not contain the words "quid pro quo," the Complaint alleges that "his suspension was the result of his not going along with Defendant Lowe's sexual advances." Cf. Portis v. First Nat'l Bank of New Albany, 34 F.3d 325, 332 n.14 ("A plaintiff need not use the magic words 'hostile work environment' to raise this claim.").

5

employee's compensation qualifies as a tangible employment action.").

Defendants argue that a tangible employment action must be an "ultimate employment decision," which the Fifth Circuit has defined as "decisions such as hiring, granting leave, discharging, promoting or compensating." McCoy v. City of Shreveport, 492 F.3d 551, 559 (5th Cir. 2007). The Court has not been provided with nor been able to locate any Fifth Circuit authority discussing the relationship between an ultimate employment decision and the tangible employment action standard set out in Ellerth. See McKenzie v. Collins, 2008 WL 2705530 (S.D. Miss. 2008) (discussing cases). However, even assuming that the standards are identical, Defendants' argument fails because the Fifth Circuit has held that a five-day unpaid suspension is an ultimate employment decision. Felton v. Polles, 315 F.3d 470, 487 (5th Cir. 2002), *overruled on other grounds by* Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006); see also Moore v. True Temper, 2011 WL 4498882 (N.D. Miss. Sept. 27, 2011) (finding unpaid suspension can be an ultimate employment decision), *pet. for interlocutory appeal denied by*, 2011 WL 5507401 (N.D. Miss. Nov. 10, 2011) ("A substantial ground for difference of opinion as to whether a five day suspension is an ultimate employment decision does not exist under Fifth Circuit precedent). Accordingly, the Court finds that a five-day suspension without pay is a "tangible employment action" sufficient to support a claim for quid pro quo sexual harassment, and MVSU is not entitled to summary judgment as to this claim.

Regarding Bustillos' alternative claim that he was subjected to sexual harassment based on a hostile work environment, MVSU asserts only that Bustillos cannot show, as part of his prima facie case, that MVSU knew or should have known of the harassment and failed to take prompt

6

remedial measures, contending that he never reported the harassment.[3] However, as noted above, because Bustillos' alleged harasser is a supervisor, he is not required to offer such proof such as part of his prima facie case. Watts, 170 F.3d at 509; see also Woods v. Delta Beverage Group., Inc., 274 F.3d 295, 298 n.2 (5th Cir.2001) (highlighting the Watts distinction between supervisor and co-worker harassment). Consequently, MSVU is not entitled to summary judgment on Bustillos' sexual harassment claim based on a hostile work environment.

    2.    Title VII Retaliation

Bustillos also brings a claim for unlawful retaliation, alleging that he was transferred to the night shift in retaliation for filing his EEOC complaint. According to an affidavit from Frank Sowell, the director of Human Resources at MVSU, Bustillos was moved to the night shift due to his failure to be punctual and missing Mondays on a regular basis. Notably, however, neither side has proferred evidence regarding who ultimately made the decision to transfer Bustillos. To establish a prima facie case of retaliation under Title VII, Bustillos must show (1) he engaged in statutorily protected activity, (2) he suffered an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse employment action. Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1092 (5th Cir. 1995). Summary judgment is appropriate if the plaintiff cannot support all three elements. Stewart v. Miss. Transp. Comm'n, 586 F.3d 321, 331 (5th Cir. 2009). However, if a plaintiff establishes a prima facie case, "the burden shifts to the employer to

---

[3]The Court notes, for clarity, that MVSU did not assert the Faragher/Ellerth affirmative defense, which allows an employer to avoid vicarious liability on a hostile work environment claim if it proves by a preponderance of the evidence both that: (1) the employer exercised reasonable care to prevent and correct promptly any such sexual harassment, and (2) the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer. Casiano, 213 F.3d at 284.

provide a 'legitimate, non-retaliatory reason for the adverse employment action.'" Hernandez v. Yellow Transp., Inc., 670 F.3d 644, 657 (5th Cir. 2012) (quoting Long v. Eastfield College, 88 F.3d 300, 304-05 (5th Cir. 1996)).

Once the employer does so, the burden shifts back to the plaintiff to offer evidence demonstrating a genuine issue of material fact that (1) the defendant's reason is not true, but is instead a pretext for retaliation (pretext alternative), or (2) the defendant's reason, though true, is only one of the reasons for its conduct, and another motivating factor is retaliation for the plaintiff engaging in protected activity (mixed-motives alternative) Rachid v. Jack in the Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004); see also Smith v. Xerox Corp., 602 F.3d 320, 331-32 (5th Cir. 2010).

MVSU does not dispute that Bustillos engaged in protected activity by filing an EEOC charge, but challenges whether he can satisfy the second and third elements of his prima facie case. Defendant first argues that a shift change is not an adverse employment action, relying on McCoy v. City of Shreveport, 492 F.3d 551, 559 (5th Cir. 2007), for the proposition that "[a]dverse employment actions include only ultimate decisions such as hiring, granting leave, discharging, promoting, or compensating." However, in the same paragraph, the McCoy court recognized that the Supreme Court had "abrogated [this] approach in the retaliation context" and defined an adverse employment action as "any action that 'might well have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" McCoy, 492 F.3d at 559 (quoting Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 126 S. Ct. 2405, 165 L .Ed. 2d 345 (2006)). Under this standard, and in the absence of citation to authority holding to the contrary, the Court finds that an issue of fact exists as to whether a transfer to the night shift might dissuade a reasonable worker from making or supporting a charge of discrimination.

Nonetheless, the Court finds that Plaintiff has failed to produce evidence of a "causal link" between the protected activity and the adverse employment action. Plaintiff filed his EEOC complaint on November 22, 2010, and his shift was changed over eight months later. Consequently, Plaintiff is unable to demonstrate causation through temporal proximity between the protected activity and the adverse employment action. See Roberts v. Unitrin Specialty Lines Ins. Co., 405 F. App'x 874, 879-80 (5th Cir. 2010) (finding that an eight month span between the alleged protected activity and termination "negate[s] any argument that a causal connection existed between the activities and the termination"). While Plaintiff argues that August 2011 was the first time the Defendants had an opportunity to change his contract after he filed his charge of discrimination, this situation, standing alone, has been held insufficient to justify an exception to the requirement of true temporal proximity. Sanders v. Leake Cnty. School Dist., 546 F. Supp. 2d 351, 360 (S.D. Miss. 2008) (rejecting argument that non-renewal of contract "at the first available opportunity," ten months after filing EEOC charge, justified departure from rule that temporal proximity must be "very close" to show causation). Furthermore, Plaintiff's contract is not included in the record, and as Defendants point out, the Plaintiff has presented no evidence that the contract even mentioned his work schedule. Finally, the record does not speak to who actually made the decision to change the Plaintiff's work schedule. Accordingly, the Court finds that the Plaintiff has failed to offer any evidence of a causal relationship between his filing of an EEOC charge and his allegedly retaliatory shift change.

Moreover, even if the Plaintiff could establish a prima facie case, MVSU has produced a legitimate, non-discriminatory reason for the shift change: that Plaintiff missed and/or failed to be punctual on Mondays. MVSU relies on two performance evaluations. The first evaluation was

9

completed in May 2010 by Christopher Taylor, who rated Bustillos' Attendance/Punctuality as "unsatisfactory," noting that Bustillos "comes to work but arrives to work late at least twice a week. He has missed a lot of Mondays off work this semester." A second evaluation was completed on February 25, 2011, by Roberta Hines, which rated Bustillos' Attendance/Punctuality as "satisfactory," but noted that "I feel the reason for the increase of absents is due to his daughter's accident." The February evaluation also contains handwritten remark by Lowe, which states "I disagree. Mr. Bustillos was reported by Mrs. Hines for taking extended breaks and reporting to work late or leaving early." MVSU has additionally produced an affidavit from its director of human resources which avers that "it is very important for [a Dorm Monitor] to be at his position during the day to monitor students. As a result of his failure to be punctual and missing Mondays on a regular basis, it was decided to move [Bustillos] to the night shift."[4]

Bustillos fails to rebut MVSU's legitimate, non-retaliatory reason for the shift change. Bustillos does not deny regularly missing Mondays, but only notes that he had a doctor's excuse for doing so. Bustillos also rhetorically asks "if Defendants claim that it was so important for the residential hall monitor to be punctual and present on Mondays, why wasn't the Plainitff's shift changed prior to one year and three months later [from the Taylor evaluation]?" However, Plaintiff fails to provide any authority for his essentially "reverse proximity" argument, which asks the Court to infer a retaliatory motive where an employer takes an action long after the protected activity occurred, based on long-standing performance issues which predated the protected activity. The Court finds that, even if Bustillos had established a prima facie case, he has failed to establish a

---

[4]As stated above, it is not apparent from the record *who* ultimately made the decision to change Bustillos' shift.

genuine issue of material fact as to whether MVSU's reasons for Bustillos' shift change were pretextual, or that retaliatory animus motivated the shift change.

Because Bustillos cannot set forth a prima facie case, his retaliation claim must fail. Further, because he has presented no evidence of pretext or that retaliatory animus was a motivating factor for the shift change, even if the court were to find a prima facie case, MVSU would nonetheless be entitled to summary judgment as to Bustillos' Title VII retaliation claim.

III.   Section 1983 Claims

   A.   MVSU

Bustillos has stipulated to dismissal of his § 1983 claims against MVSU. Accordingly, the Courts grants Defendants' Motion as to this claim.

   B.   Bryce Lowe

In his initial motion for summary judgment, Defendant Lowe failed to move for summary judgment as to Plaintiff's § 1983 claims brought against him in his individual capacity. After Plaintiff noted this in his response, Lowe attempts to do so through his reply memorandum and argues that Bustillos' § 1983 claim against him is insufficiently pleaded. "[S]eeking summary judgment on a ground not raised in the motion but instead raised for the first time in a reply brief is impermissable." State Farm Fire & Cas. v. Whirlpool Corp., 2012 WL 2422922, at *2 (N.D. Tex. June 27, 2012) (quoting Mendez v. Caterpillar, Inc., 2012 WL 90492, at *5 (W.D.Tex. Jan.11, 2012)); see also J.T. Shannon Lumber Co., Inc. v. Gilco Lumber, Inc., 2008 WL 4372753 (N.D. Miss. 2008) ("It is the practice of this court and the district courts to refuse to consider arguments raised for the first time in reply briefs.") (quoting Gillaspy v. Dallas Indep. Sch. Dist., 278 F. App'x 307, (5th Cir. 2008)). Lowe, as the moving party, had the burden to identify in his initial motion

11

"each claim . . . on which summary judgment is sought," the absence of a "genuine dispute as to any material fact," and his entitlement to judgment as a matter of law. FED. R. CIV. P. 56(a). Lowe failed to do so, and accordingly, has not demonstrated his entitlement to summary judgment on Plaintiff's § 1983 claims.

Moreover, the Court finds that the Complaint contains sufficient facts to state a plausible claim against Lowe for sexual harassment in violation of Plaintiff's rights under the equal protection clause and for First Amendment retaliation. However, given the Court's ruling as to Plaintiff's Title VII retaliation claim, the Court is dubious as to the viability of Plaintiff's First Amendment retaliation claim against Lowe.[5] To establish a First Amendment Retaliation claim, a plaintiff must prove (1) he suffered an adverse employment action; (2) he engaged in speech that was on a matter of public concern; (3) his interest in commenting on matters of public concern outweighs his employer's interest in maintaining efficiency in the workplace; and (4) the speech motivated the adverse employment action. See Serna v. City of San Antonio, 244 F.3d 479, 482, (5th Cir. 2001). Aside from the causation problems previously identified, "only final decision-makers may be held liable for First Amendment retaliation employment discrimination under § 1983." Johnson v. Louisiana, 369 F.3d 826, 831 (5th Cir. 2004). The record is devoid of evidence that Lowe was the final decision maker with regard to Bustillos' shift change.

Pursuant to Rule 56(f), the Court gives notice to the Plaintiff that it is considering sua sponte granting summary judgment as to Plaintiff's First Amendment retaliation claim against Lowe individually. Plaintiff shall have fourteen (14) days to file a response, if he wishes to do so.

---

[5]In his sur-rebuttal, Plaintiff asserts that "[T]he same facts which support Plainitff's claims under Title VII for retaliation . . . support Plaintiff's claims [against Bryce Lowe] under Section 1983."

Defendants may file a reply, if they desire to do so, within seven (7) days of Plaintiff's response.

CONCLUSION

For the foregoing reasons, the Court grants Defendants' Motion for Summary Judgment as to Plaintiff's Title VII claims against Bryce Lowe individually, Plaintiff's Title VII retaliation claim against MVSU, and Plaintiff's § 1983 claims against MVSU. Plaintiff shall be granted fourteen (14) days to show cause why the Court should not sua sponte grant summary judgment as to Plaintiff's First Amendment retaliation claim against Bryce Lowe. Defendants' Motion is otherwise denied. SO ORDERED on this, the 9th day of January, 2013.

/s/ Sharion Aycock
**UNITED STATES DISTRICT JUDGE**